# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JOSEPH F. MERSHAD, | : | Case No. 3:15-cv-81 |
| | : | |
| Plaintiff, | : | District Judge Walter Herbert Rice |
| | : | |
| vs. | : | Chief Magistrate Judge Sharon L. Ovington |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATION[1]

This Social Security disability benefits appeal is before the Court on Plaintiff's statement of errors (Doc. 7), the Commissioner's memorandum in opposition (Doc. 10), Plaintiff's reply (Doc. 12), the administrative record (Doc. 5), and the record as a whole. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore not entitled to a period of disability and disability insurance benefits ("DIB"). (*See* Doc. 5, PageID ## 45-54 (the "ALJ's decision")).

## I.  INTRODUCTION

Plaintiff Joseph F. Mershad protectively filed an application for DIB on June 27, 2012, alleging disability beginning on January 1, 2011. (Doc. 5, PageID # 236). Plaintiff stated he was unable to work due to irritable bowel syndrome ("IBS"). (*Id.* at 249). His claim was denied initially and on reconsideration. (*Id.* at 45).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

Plaintiff requested a hearing before an ALJ, which was held on September 16, 2013. (*Id.* at 45). Plaintiff and a vocational expert ("VE") testified, with Plaintiff's counsel in attendance. (*Id.*)

On October 8, 2013, ALJ George Michael Gaffaney issued an unfavorable decision, finding that Plaintiff had not been under a disability as defined in the Social Security Act, and was therefore not entitled to a period of disability and DIB. (*Id.* at 54). The ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform sedentary work with certain limitations. (*Id.* at 49). Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (*Id.* at 53). Therefore, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 54).

The decision became final and appealable on January 12, 2015, when the Appeals Council denied Plaintiff's request for review. (*Id.* at 34-38). Plaintiff then properly commenced this action in federal court for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 42 years old. (Doc. 5, PageID ## 53, 188). He had completed high school and attended 2 years of college. (*Id.* at 250). Plaintiff did not have any specialized job training, nor had he completed a trade or vocation school. (*Id.*) The ALJ found that Plaintiff had past relevant work as an associate, assistant manager, manager, and data entry worker, but determined that

_____

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

2

Plaintiff is precluded from returning to any of his past positions due to his limitations.[3]

(*Id.* at 52).

The ALJ's "Findings," which represent the rationale of his decision, are as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant engaged in substantial gainful activity during the following periods: January 2011 to June 2012 (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. There has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: irritable bowel syndrome ("IBS"), depression, and anxiety (20 CFR 404.1520(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

6. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) where the claimant lifts or carries 10 pounds occasionally and 5 pounds frequently. The claimant can stand or walk for two of eight hours during the workday. The claimant can sit for six of eight hours during the workday. The claimant's work is limited to simple, routine tasks (unskilled). The claimant can only occasionally adapt to changes in work setting. The claimant can only occasionally interact with the public.

---

[3] Pursuant to 20 C.F.R. § 404.1560(b)(1), "past relevant work" is defined as "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."

7.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

8.  The claimant was born [i]n … 1971, and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

9.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of [the ALJ's] decision (20 CFR 404.1520(g)).

(Doc. 5, PageID ## 46-54).  In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act and was therefore not entitled to a period of disability and DIB.  (*Id.* at 54).

On appeal, Plaintiff argues that: (1) the ALJ failed to give proper weight to the opinions of his treating physicians; (2) the ALJ failed to make any credibility assessments about Plaintiff's testimony and ignored the severity of symptoms as Plaintiff described them; and (3) the ALJ failed to consider the non-exertional limitations resulting from Plaintiff's IBS when he created an RFC for sedentary work.  (Doc. 7).

4

## II.  STANDARD OF REVIEW

The Court's inquiry on appeal is limited to whether the ALJ's non-disability finding is supported by substantial evidence and whether the correct legal standard was applied.  42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  Substantial evidence is more than a "mere scintilla" but less than a preponderance of the evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

In reviewing the ALJ's decision, the district court must look to the record as a whole and may not base its decision on one piece of evidence while disregarding all other relevant evidence.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  Even if the district court "might have reached a contrary conclusion of fact, the [ALJ's] decision must be affirmed so long as it is supported by substantial evidence."  *Kyle*, 609 F.3d at 854-855 (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009)).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, he must present sufficient evidence to show that, during the relevant time period, he was unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).

## III.  BACKGROUND

The relevant facts, as reflected in the record, are as follow:[4]

### A.  Relevant Medical Evidence

#### 1.  *Physical Impairments*

##### a.  John E. Mauer, M.D.

Plaintiff began treating with primary care physician, John E. Mauer, M.D. on August 14, 2012.  (Doc. 5, PageID ## 454-59).  Dr. Mauer noted Plaintiff suffers from multifactorial depression.  (*Id*. at 455).  He further noted that Plaintiff had a serious motor vehicle accident with apparently a closed head injury when he was age 17, which has significantly affected his cognitive function.  (*Id*.)  Dr. Mauer wrote that Plaintiff has tried as many as ten or eleven types of medication for depression, but has only been able to tolerate one.  (*Id*.)  Dr. Mauer noted his intent to keep Plaintiff on the one medication he is able to tolerate and refer him to a psychiatrist.  (*Id*.)  Plaintiff reported chronic abdominal pain in the epigastric area with nausea, vomiting, and loose stools since his gallbladder surgery.  (*Id*.)  Plaintiff also had dysuria and urgency issues.  (*Id*.)  Plaintiff continued seeing Dr. Mauer for follow-up appointments throughout 2012 and 2013.  (*Id*. at 390-459; 524-633).

On September 13, 2013, Dr. Mauer completed a functional capacity evaluation in which he opined that Plaintiff suffered from a chronic moderately severe abdominal pain,

---

[4] Having thoroughly reviewed the administrative record, the Court finds that a detailed recitation of all facts in this case is unnecessary and, therefore, restricts its statement of the facts to those relevant to Plaintiff's alleged errors.

nausea with dry heaves once a week and loose stools five times a day, up to sixteen times a day. (*Id.* at 643). Dr. Mauer opined that Plaintiff would not be able to get through an eight-hour work day without lying down, even with the benefit of normal breaks. (*Id.* at 647). Further, he noted that Plaintiff would be absent three or more days of work per month, but specified that the majority of the impairments that would preclude Plaintiff from engaging in gainful employment are "psych related." (*Id.* at 649).

        b. <u>Diklar Makola, M.D.</u>

      Gastroenterologist, Diklar Makola, M.D., saw Plaintiff, by referral, on November 29, 2011, December 15, 2011, and June 14, 2012. (Doc. 5, PageID ## 377-83). On November 29, 2011, Plaintiff reported a history of abdominal pain and diarrhea, which had been getting progressively worse since his gallbladder removal surgery. (*Id.* at 382-83). He reported abdominal cramping, and it is noted that the diarrhea typically occurs multiple times per day and after meals. (*Id.* at 382). Dr. Makola noted that Plaintiff also had heartburn, cough, wheezing, back pain, insomnia, and depression. (*Id.*) Further, it is noted that Plaintiff neither smokes, nor drinks alcohol. (*Id.*) Dr. Makola opined that Plaintiff's "diarrhea is likely multi-factorial including irritable bowel syndrome and post-cholecystectomy and diarrhea." (*Id.* at 383). Dr. Makola also noted that Plaintiff had hemorrhoids but was asymptomatic at that time. (*Id.*) Dr. Makola prescribed medication, sent Plaintiff for a stool study, and scheduled a follow-up for two weeks after he obtained medical records from Plaintiff's specialists. (*Id.*)

      At his follow-up appointment on December 15, 2011, Dr. Makola noted that Plaintiff's tests were negative for infection. (*Id.* at 381). Plaintiff reported that "his

bowel movements ha[d] become somewhat more formed," from the medication.  (*Id*.)

However, he was still experiencing abdominal cramping with gas and bloating.  (*Id*.)

Plaintiff was diagnosed with post- cholecystectomy diarrhea and IBS with diarrhea.  (*Id*.)

Dr. Makola increased Plaintiff's medication and scheduled him for a follow-up

appointment in six months.  (*Id*.)

On June 14, 2012, Plaintiff had his six-month follow-up appointment with Dr.

Makola.  (*Id*. at 377-80).  Dr. Makola noted that Plaintiff was experiencing "significant

anxiety and panic attacks."  (*Id*. at 377).  Dr. Makola also noted that:

> [Plaintiff's] diarrhea does improve with [medication] taken once a day.
> However, occasionally when the diarrhea does not improve, he needs to
> take a second dose but invariably when he takes the second dose, this
> causes nausea and vomiting.   On days when symptoms are not well
> controlled, he has about five to six bowel movements a day.  These occur
> mainly during the day.   The diarrheal symptoms are associated with
> bloating and cramping in the lower abdomen.  The symptoms are helped
> significantly by Librium, which he takes daily up to four times a day and
> has been taking for the past 1 ½ years.  I did also prescribe him some
> Donnatal which helps his symptoms.  He takes this about four times a
> week.  However, he is concerned about the sedating effects.

(*Id*.)

Dr. Makola's notes also indicate that Plaintiff's vision had deteriorated, which he

blamed on the medication.  (*Id*.)  Moreover, the notes indicate that Plaintiff had lost

twelve pounds since his prior appointment (*i.e.*, from 190.5 pounds to 178.5 pounds in six

months).  (Compare *id*. at 377, with *id*. at 381).  Dr. Makola adjusted Plaintiff's

medications and recommended he follow-up in six months.  (*Id.* at 377-78).

c.  Maria Congbalay, M.D./Bradley Lewis, M.D.

On October 15, 2012, state agency physician, Maria Congbalay, M.D., reviewed the medical evidence and completed an evaluation regarding Plaintiff's physical impairments.  (Doc. 5, PageID # 100).  Specifically, Dr. Congbalay opined that Plaintiff could: lift/carry fifty pounds occasionally and twenty five pounds frequently; stand/walk for six hours out of eight and sit for six hours out of eight; frequently climb ramps/stairs, stoop or crawl; and only occasionally climb ladders, ropes, or scaffolds.  (*Id.* at 100-01).  Dr. Congbalay found Plaintiff is fully credible, noting that his statements regarding IBS are consistent with the findings.  (*Id.*)

On January 5, 2013, state agency physician, Dr. Lewis reviewed the medical evidence upon reconsideration and affirmed Dr. Congbalay's assessment.  (*Id.* at 112-14).

### 2.  *Mental Impairments*

a.  Jack C. Lunderman, Jr., M.D.

Psychiatrist, Jack C. Lunderman, Jr., M.D., began seeing Plaintiff on October 22, 2012.  (Doc. 5, PageID ## 466-70, 640).  Plaintiff reported insomnia, loss of appetite, poor memory, and lower concentration.  (*Id.* at 469-70).  Thereafter, Plaintiff saw Dr. Lunderman approximately once every two months, unless his symptoms necessitated more frequent appointments.  (*Id.* at 640).

In January 2013, Plaintiff reported that he was depressed over losing his job; however, notes from the following week evidence significant improvement.  (*Id.* at 463-64).  In February 2013, Dr. Lunderman noted that Plaintiff's mood was improving and

his Global Assessment of Functioning ("GAF") score was noted to be "80+" at the time.[5]
(*Id.* at 462).  In March 2013, Plaintiff had no suicidal ideation, a normal appetite, normal
concentration, a stable mood, and stable thoughts.  (*Id.* at 461).  Dr. Lunderman
concluded that Plaintiff was doing well overall and was in stable condition.  (*Id.*)  In June
2013, Plaintiff was experiencing some depression and anxiety, and was also having
trouble sleeping.  (*Id.* at 460).

On September 11, 2013, Dr. Lunderman completed a mental residual functional
capacity assessment ("MRFC Form") in which he listed Plaintiff's diagnoses as a panic
disorder and depressive disorder.  (*Id.* at 640-42).  Specifically, Dr. Lunderman noted
that:

> [Plaintiff] suffers disease process in 2 body systems, each negatively
> impacting the other (irritable bowel and depression/anxiety/panic).  His
> anxiety and panic symptoms can be intensified by the physical discomfort
> of his IBS which cause him a sense of urgency and frequency of use of the
> bathroom.   These  symptoms  can  present  on  an  intermittent  and
> unpredictable basis thus negatively impacting his ability to function
> predictably in the workplace setting.

(*Id.* at 640).  Further, Dr. Lunderman opined that Plaintiff was markedly limited in the
ability to perform activities within a schedule, maintain regular attendance and be

---

[5] A GAF score is used to report a clinician's judgment as to a patient's overall level of
psychological, social, and occupational functioning.  <u>DSM-IV-TR Classification Appendix</u>,
available at:  http://wps.prenhall.com/wps/media/objects/219/225111/CD_DSMIV.pdf.  The
GAF scale ranges from 0 to 100, divided into ten-point increments, with a lower score indicating
greater symptom severity and difficulty functioning.  *Id.*

A GAF score of 71 to 80 indicates:  "If symptoms are present, they are transient and expectable
reactions to psychosocial stressors (e.g., difficulty concentrating after family argument), no more
than slight impairment in social, occupational, or school functioning (e.g., temporarily falling
behind in schoolwork)."  *Id.*

punctual within customary tolerances. (*Id*. at 641). Dr. Lunderman also opined that Plaintiff would likely be absent three or more times a month, but specifically noted that this is true "if/as symptoms exacerbate." (*Id.*)

Dr. Lunderman also indicated on the MRFC form that there was no evidence of limitations with regard to Plaintiff's ability to: understand and remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; follow work rules; and be aware of hazards and take appropriate precautions. (*Id*. at 641-42). However, Dr. Lunderman opined that Plaintiff had "some evidence of limitations" as to his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; and set realistic goals or make plans independently of others. (*Id*.) Finally, he noted moderate to marked limitations, depending on the level of impact from the IBS, in Plaintiff's ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and travel to unfamiliar places or use public transportation. (*Id*.) Dr. Lunderman also noted that the unpredictability of Plaintiff's symptoms negatively impact his social life and interpersonal relationships. (*Id*. at 642).

b. Caroline Lewin, Ph.D./Frank Orosz, Ph.D.

Non-examining state agency psychologist, Caroline Lewin, Ph.D., conducted an initial review of the record on September 14, 2012, at the request of the state agency. (Doc. 5, PageID ## 98-99). Dr. Lewin determined that Plaintiff had mild restrictions in activities of daily living, mild difficulties maintaining social functioning and no

11

difficulties in maintaining concentration, persistence or pace; with no episodes of

decompensation. (*Id.* at 98). Dr. Lewin concluded,

> [Plaintiff] reports some anxiety issues but not sure of reason. Tends to
> come and go. Has not had any issues with working, would take a break and
> was often able to return to his duties after taking a librium and relaxing for
> about 15 minutes. Has been referred to counselor to get to root of issue.
> Checked to see if Xanax would be beneficial but doesn't feel it is necessary
> as he is already on enough sedatives from his IBS. Currently non-severe.

(*Id.* at 99).

On January 5, 2013, state agency psychologist, Frank Orosz, Ph.D., reviewed the

medical evidence upon reconsideration and determined that Plaintiff had moderate

restrictions in activities of daily living, moderate difficulties maintaining social

functioning and in maintaining concentration, persistence or pace, and no episodes of

decompensation. (*Id.* at 111). Dr. Orosz opined that Plaintiff's work should be limited to

simple, routine tasks, and a workplace without strict daily quota requirements. (*Id.* at

116).

### B. The Administrative Hearing

#### *1. Plaintiff's Testimony*

Plaintiff testified that he lives alone, as he has been for at least the last two years.

(Doc. 5, PageID # 65). He testified that he was living off of his savings, as his only

source of income was from working approximately fifteen hours per month as a

bookkeeper for his mother's business, earning $8.50 per hour. (*Id.*) Plaintiff also stated

that he was last employed by UPS, but he was terminated in September 2012 for being

too slow on the job. (*Id.* at 65-66). Plaintiff testified that the reason he was slow was

because of he frequently had to stop to use the restroom.  (*Id.* at 67).  He also stated that

he gets very tired from constantly using the restroom and that he takes two naps a day.

(*Id.*)  Plaintiff testified that his bowel problems began after his gallbladder removal in

January 2011, which he believed would actually relieve his IBS symptoms.  (*Id.* at 68).

Plaintiff explained that he experiences high bowel movement frequency and that

some days are better than others.  (*Id.*)  Plaintiff indicated that he has two or three bad

days every week, on which days he will use the restroom up to fifteen or sixteen times,

for ten to fifteen minutes at a time.  (*Id.*)  Plaintiff testified that his bad days have gotten

significantly worse, and that in June 2012, a bad day only consisted of five to six trips to

the restroom per day.  (*Id*. at 69).  However, now Plaintiff stated that on a *good* day he

uses the restroom five times, again for ten to fifteen minutes at a time.  (*Id.*)  Plaintiff

further testified that he takes medication (Welchol on bad days and Cholestyramine on

very bad days), but the medication makes him nauseous.  (*Id.*)

Plaintiff reported that his condition affects his ability to live on a day-to-day basis.

(*Id*. at 70).  For example, Plaintiff testified that he can drive, but he always brings a

blanket, a bucket, and an extra set of clothes, because he does not know "when it's going

to hit."  (*Id.*)  Further, he stated that his frequent restroom use interferes with his ability to

work on full-time basis, even in his current position working for his mother.  (*Id*. at 71).

Plaintiff testified that when he leaves the house, such as the day of the administrative

hearing, he takes extra Welchol, which helps the restroom urgency and settles his

stomach, but also makes him very drowsy and lightheaded.  (*Id.*)  Plaintiff also limits his

meals so that he is only eats one meal per day when he gets home in the evening.  (*Id.*)

13

Plaintiff explained that his mother makes his meals for the week and she sends them home with him every Sunday after he does the bookkeeping. (*Id.* at 71-72). He testified that his limited food intake contributes to his weakness and drowsiness throughout the day. (*Id.*) However, eating more to keep his energy up would also increase his restroom frequency. (*Id.* at 73).

Plaintiff testified that when he goes to work for his mother, there is a bathroom very close by, and his bathroom is no more than five feet away from his bedroom when he is at home. (*Id.* at 72). Regardless, Plaintiff admits that he has had accidents in the past, even in that short distance. (*Id.*) He stated that when he feels the urge to go to the restroom, he may have as little as five to ten seconds to make it before having an accident. (*Id.* at 72-73). Plaintiff testified that he would not be able to go to work at a regular workplace if he were having a bad IBS day. (*Id.* at 73). Further, Plaintiff testified that working would be a challenge because he might be too far from a restroom, and also because movement often brings on more frequent bowel movements. (*Id.* at 74-75). Plaintiff stated that he is even uncomfortable using the restroom at his mother's home, due to frequency and potential for accidents. (*Id.* at 75). He testified that he has had to clean up accident-related messes in the past. (*Id.* at 75-76).

Plaintiff does not do his own house work, but does some yard work and also does his laundry. (*Id.* at 76). He stated that he feels abdominal pain, which may occur as frequently as every fifteen minutes, causing him to stop and lie down. (*Id.*) The breaks from abdominal pain are in addition to the two, one to two hour naps that Plaintiff takes every day. (*Id.* at 76-77). Plaintiff states that he would not be able to get through the day

14

without taking these breaks and naps.  (*Id.*)  Also, Plaintiff experiences a "lightning bolt" of pain in his rectum, every few minutes, which hits suddenly and then goes away immediately.  (*Id.* at 78).

Plaintiff testified that his IBS has limited his social life, as he is largely unable to go out.  (*Id.* at 77-78).  If he does go out, Plaintiff states it is only with his parents, as he is more comfortable with them being aware of his struggle.  (*Id.*)  Plaintiff also testified that he had suffered from depression and anxiety for years, and that his IBS has "greatly" aggravated those issues.  (*Id.* at 79).  He stated that his IBS has prevented him from interacting or being with other people, because he is anxious and worried about having an accident in front of his friends.  (*Id.*)  Plaintiff stated that his condition has caused him concern regarding how others perceive him, and he feels bad about himself.  (*Id.*)

Plaintiff stated that his medications cause drowsiness and dizziness which make it harder for him to do any activities.  (*Id.* at 80).  He often takes his mother's bookkeeping work home with him.  (*Id.* at 80-81).  However, he still has trouble focusing on tasks due to discomfort.  (*Id.*)  Plaintiff estimates that he can work for about an hour at a time, but loses approximately half of it distracted by pain, discomfort, and trips to the restroom. (*Id.* at 81).  Further, Plaintiff states he is unable to sit for more than an hour because of his hemorrhoids.  (*Id.*)

### 2. The VE's Testimony

Vocational expert ("VE"), Cherise Powell, testified and responded to hypotheticals posed by both the ALJ and Plaintiff's counsel.  (Doc. 5, PageID ## 85-90).

In response to the ALJ's hypothetical, the VE testified that there were jobs in the national and regional economy, which could be performed by an individual of Plaintiff's age, education, and work experience, who is limited to simple, routine tasks with only occasional changes in routine work setting, only occasional interaction with the public, lifting no more than ten pounds occasionally and five pounds frequently, and standing for two hours and sitting for six hours during an eight-hour work day.  (*Id*. at 87-88). However, when the ALJ modified the hypothetical to include four unscheduled rest breaks of fifteen minutes each, the VE testified that the additional breaks would preclude performance of any job on a full time competitive basis.  (*Id*. at 88).

When examined by Plaintiff's counsel, the VE testified that none of the jobs could be performed if the individual also needed the "freedom to lay down as needed."  (*Id*. at 89).  Additionally, there would be no jobs available if the individual needed to be off three or more days per month or, alternatively, if he were off-task more than 10% of the day.  (*Id*.)  However, the jobs would still be available if the individual needed to be no more than ten to fifteen seconds away from a restroom.  (*Id*. at 89-90).

**C.  The ALJ's Decision**

The ALJ found that Plaintiff's severe impairments included IBS, depression, and anxiety, but noted that "the record indicates that these impairments all stabilized with treatment."  (Doc. 5, PageID ## 47, 49).

In weighing the medical source opinions, the ALJ assigned "some" weight to the opinions of the state agency reviewers, Drs. Congbalay and Lewis.  (*Id.* at 51).  The ALJ gave Dr. Mauer's opinion "little to no weight."  (*Id.*)  With regard to mental impairments,

the ALJ gave "great" weight to the findings of state agency reviewing psychologist, Dr.

Orosz, but "little to no weight" to Dr. Lewin.  (*Id*. at 51-52)  Further, the ALJ gave "little

to no weight" to treating psychiatrist, Dr. Lunderman.  (*Id.* at 52).

## IV.  ANALYSIS

### A.  The ALJ's Assignment of Weight to Plaintiff's Treating Source

Plaintiff first argues that the ALJ failed to adhere to the Social Security

Administration's ("SSA") regulatory mandates for weighing treating source opinions.

(Doc. 7 at 11-14).  More specifically, Plaintiff asserts that the ALJ improperly focused on

isolated pieces of the record as a basis for discrediting the treating sources.  (*Id.* at 12).

"Regardless of its source, [an ALJ must] evaluate every medical opinion," in order

to determine whether a claimant is disabled.  20 C.F.R. § 404.1527(b), (c).  However,

"not all medical sources need be treated equally."  *Brooks v. Comm'r of Soc. Sec.*, 531 F.

App'x 636, 642 (6th Cir. 2013) (internal quotation marks and citations omitted).  The

Regulations require that a treating source's opinion be given "controlling weight" as long

as it is: (1) "well-supported" by objective evidence; and (2) "not inconsistent with the

other substantial evidence."  20 C.F.R. § 404.1527(c)(2).  Treating source opinions are

generally given greater weight because treating physicians are more likely "to provide a

detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a

unique perspective to the medical evidence that cannot be obtained from the objective

medical findings alone or from reports of individual examinations, such as consultative

examinations or brief hospitalizations."  *Id.*  On that note, the opinions of non-treating

and, certainly, non-examining sources are typically entitled to less weight.  *Id.*

17

"On the other hand … '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).  "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (discussing 20 C.F.R. § 1527(d)(2)).

If, upon consideration of the § 404.1527(c) factors, the ALJ rejects the opinion of a treating physician, he must articulate "good reasons" for doing so. *Wilson*, 378 F.3d at 544.  "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases … [but] also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* at 544-45 (internal quotation marks and citations omitted).  In particular, the ALJ's decision must articulate the "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. Rul. 96-2p, 1996

18

WL 374188, at *5 (July 2, 1996).  Notably, the ALJ's duty to properly articulate 'good

reasons' is so significant that, "failure to follow the procedural requirement of identifying

the reasons for discounting the opinions and for explaining precisely how those reasons

affected the weight accorded the opinions denotes a lack of substantial evidence, even

where the conclusion of the ALJ may be justified based upon the record."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

Here, Plaintiff alleges that the ALJ rejected the opinions of treating sources,

psychiatrist Jack C. Lunderman, Jr., M.D., and primary care physician John E. Mauer,

M.D.  (Doc. 7 at 13).  As to Dr. Lunderman, the ALJ's decision states that:

> Treating psychiatrist Dr. Jack Lunderman M.D. opined that the claimant
> will miss three or [more] days a month due to [his] IBS symptoms, but
> mainly has no or mild mental health limitations (Exhibit 13F).   Dr.
> Lunderman is an acceptable, treating source, but his opinion is not
> persuasive.  Similarly to Dr. Mauer, Dr. Lunderman's opinion is based on
> the claimant's IBS, but he is a psychiatrist and not a gastroenterologist
> (Exhibit 13F). His own treatment notes indicated the claimant is in stable
> condition and generally doing well (Exhibit 8F/2).  He does not have any
> indication in his treatment notes that the claimant's IBS will prevent the
> claimant from working (Exhibit 8F).  Therefore, his opinion is granted little
> to no weight.

(Doc. 5, PageID # 52).

First, the ALJ's noted inconsistencies in Dr. Lunderman's opinion appear

disingenuous.  The ALJ states that Dr. Lunderman "does not have any indication in his

treatment notes that [Plaintiff's] IBS will prevent the claimant from working."  (*Id*.)

However, there is no reason for this Court, or the ALJ, to assume that Plaintiff was seeing

Dr. Lunderman for the purpose of padding the administrative record.  The more logical

conclusion (and indeed the proper conclusion) is that Plaintiff was <u>seeking medical</u>

treatment from Dr. Lunderman.  Therefore, there would be little reason for the treatment notes to reflect Plaintiff's inability to work.  Second, the fact that the treatment notes often reflect that Plaintiff's psychological symptoms were mild *at that time* does not undermine Dr. Lunderman's more focused opinion, which states that the sudden and unpredictable nature of Plaintiff's symptoms make it difficult for him to maintain a regular work schedule, focus on tasks, interact with co-workers, etc.  In short, the ALJ's rationale for concluding that Dr. Lunderman's opinion is not entitled to controlling weight is insufficient.

Further, the ALJ discredits Dr. Lunderman's opinion, because it is "based on [Plaintiff's] IBS," and Dr. Lunderman is not a gastroenterologist.  (*Id.*)  However, this statement misrepresents Dr. Lunderman's assessment.  While Dr. Lunderman's opinion is indeed based upon Plaintiff's IBS, it focuses squarely on the depression, anxiety, and panic that Plaintiff suffers due to the unpredictable symptoms *associated* with his IBS. (*Id.* at 640-42).  It bears reiterating Dr. Lunderman's opinion that:

> [Plaintiff] suffers disease process in 2 body systems, each negatively impacting the other (irritable bowel and depression/anxiety/panic).  His anxiety and panic symptoms can be intensified by the physical discomfort of his IBS which cause him a sense of urgency and frequency of use of the bathroom.  These symptoms can present on an intermittent and unpredictable basis thus negatively impacting his ability to function predictably in the workplace setting.

(*Id.* at 640).  In other words, Dr. Lunderman opines that the physical discomfort and unpredictable nature of Plaintiff's physical impairment (*i.e.*, IBS) exacerbates his anxiety and panic symptoms, which anxiety, in turn, only worsens his IBS symptoms.  As a psychiatrist and a medical doctor, Dr. Lunderman is more than qualified to offer such an

opinion.  Thus, the ALJ's focus on the fact that Dr. Lunderman is not a gastroenterologist is erroneous.

Next, as to Plaintiff's treating physician, John Mauer, M.D., the ALJ's decision notes as follows:

> Treating physician Dr. John Mauer M.D. opined that the claimant could do eight hours of work, but will miss three or more days of work per month (Exhibit 14F).  Dr. Mauer is an acceptable, treating source, but his opinion is not persuasive.  Dr. Mauer's conclusion that the claimant will miss three days of work per month is inconsistent with the conclusion of gastrointestinal specialist Dr. Makola (Exhibit 5F/6).  She found that the claimant's IBS is mostly controlled with medication (Exhibit 5F/6).  Dr. Mauer bases his entire opinion on the claimant's IBS, yet he is not a gastroenterologist (Exhibit 14F).  His opinion is otherwise unsupported, as he does not attach any records to support his analysis (Exhibit 14F).  Also, the record indicates that he has a limited treating relationship with the claimant (Exhibit 7F, Exhibit 11F).  For those reasons, his opinion is granted little to no weight.

(Doc. 5, PageID # 52).

First, the ALJ states that Dr. Mauer's conclusion that Plaintiff will miss three days of work per month is <u>inconsistent</u> with Dr. Makola's opinion that Plaintiff's IBS is mostly controlled with medication.  This Court fails to see the inconsistency.  Notably, Dr. Makola's opinion is that Plaintiff's IBS is <u>mostly</u> controlled with medication.  (*See id*. at 377).  However, in light of the fact that the symptoms are <u>not entirely</u> controlled, there is no inherent inconsistency in saying that Plaintiff may still miss three days of work per month.  Moreover, the ALJ fails to consider that the medication—which does not control Plaintiff's IBS symptoms entirely—also causes serious side effects, such as nausea, vomiting, drowsiness, etc.  (*Id*.)  Accordingly, the ALJ's rationale for not

21

affording Dr. Mauer's opinion controlling weight, due to alleged inconsistency, is without merit.

Second, just as with Dr. Lunderman, the ALJ next focuses on Dr. Mauer's area of medical specialty. While specialization is certainly a consideration pursuant to 20 C.F.R. § 404.1527(c), in the instant case, the ALJ placed far too much significance on that one factor. In short, it was improper for the ALJ to discredit the opinion of a licensed medical doctor and treating source, with regard to a standard medical issue, solely because he is not a specialist.[6]

The ALJ failed to provide sufficient reason for not affording Plaintiff's treating sources, Drs. Lunderman and Mauer, controlling weight. Moreover, the ALJ erred in further discrediting the treating source opinions by improperly focusing on their areas of medical specialization. As the ALJ failed to properly weigh Plaintiff's treating source opinions, as required under the SSA's regulations, the decision should be reversed.

**B.  The ALJ's Credibility Assessment**

Next, Plaintiff argues that the ALJ ignored Plaintiff's allegations regarding the severity of his symptoms and, further, failed to make any credibility assessment regarding Plaintiff's testimony.

In making a determination of disability, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider [the claimant's] credibility." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Subjective complaints

---

[6] If such scrutiny were appropriate, then the opinion of every primary care physicians would essentially be rendered worthless.

may "support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Id.* at 475-76.

The Court must "accord the ALJ's determination of credibility great weight and deference particularly since the ALJ has the opportunity … of observing [the claimant's] demeanor while testifying." *Id.* However, to appropriately evaluate the credibility of the claimant's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight … [given] to the individual's statements and the reasons for that weight." SSR 96-7p, at *2. Indeed, "'[i]t is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.'" *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, at *5. "Discounting credibility to a certain degree is appropriate where an ALJ finds

23

contradictions among medical reports, claimant's testimony, and other evidence."
*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted).
However, "[a]n individual's statements about the intensity and persistence of pain or
other symptoms or about the effect the symptoms have on his or her ability to work may
not be disregarded solely because they are not substantiated by objective medical
evidence."  SSR 96-7p, at *1.

 Here, the ALJ appears to rely occasionally on Plaintiff's testimony throughout the
decision, largely in finding that Plaintiff was <u>moderately</u> impaired in his ability to engage
in activities of daily living, as well as social functioning.  (Doc. 5, PageID # 48).
However, such findings fall short of the severity to which Plaintiff testified.  Moreover,
in other instances, the ALJ plainly discredits Plaintiff's testimony.

 For example, Plaintiff's previous employer supplied a letter explaining that
Plaintiff was terminated from his position for being "slow," which Plaintiff testified was
due to his frequent need to take restroom breaks.  (*Id*. at 66-67).  However, the ALJ gave
no weight to the employer's letter, stating in a footnote that "there is no indication [what]
his assessment means or how it relates to the claimant's ability to perform all jobs." [7]  (*Id*.
at 52, n.3).  The implication here is that the ALJ discredited Plaintiff's testimony

---

[7] The Court also notes that the ALJ's statement that the letter "cannot be granted any weight,"
because Plaintiff's former employer is not an "acceptable medical source," is inaccurate.  *See*
Soc. Sec. Rul. 06-03p, 2006 WL 2329939 ("Consistent with 20 CFR 404.1513(d)(4) and
416.913(d)(4), we also consider evidence provided by other 'non-medical sources' such as
spouses, other relatives, friends, employers, and neighbors … the [ALJ] generally should explain
the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion
of the evidence in the determination or decision allows a claimant or subsequent reviewer to
follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the
case").

explaining what his employer meant when he said Plaintiff was a "slow" employee. Additionally, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, and specifically noted, again in a footnote, that,

> Counsel proposed additional job preclusive limitations of laying down during the day, being absent two or three days per month, and being off task 10 to 15 percent of the work period (vocational expert testimony). But, these restrictions are not supported by the record that indicates the claimant's IBS, anxiety, and depression are stable with medication (Exhibit 5F/6, Exhibit 8F/2).

(*Id.* at 53, n. 4).  However, setting aside the fact that the medical records do not indicate the level of symptom stability the ALJ asserts, Plaintiff specifically testified that he does need to lie down, and that he can only work in one hour intervals and is off-task for 50% of that time.  (*Id.* at 81).

While the ALJ was not required to accept Plaintiff's allegations as true, he was required to specify his reasons for discrediting Plaintiff's testimony.  And this Court agrees that the ALJ failed to provide any concrete assessment of credibility, let alone articulate specific reasons.  Accordingly, the ALJ erred by discrediting Plaintiff's testimony without articulating an appropriate basis for his credibility assessment.

### C. The ALJ's RFC Determination

Finally, Plaintiff argues that the ALJ failed to consider the non-exertional limitations resulting from Plaintiff's IBS when he created an RFC for sedentary work.  In short, this Court agrees.

While the ALJ recognized that the need for frequent bathroom breaks would impose certain exertional limitations, *i.e.*, lifting or walking, as required in medium jobs,

he failed to recognize that frequent trips to the restroom would also take an individual off task. Further, at the hearing the ALJ posed a hypothetical to the VE involving an unskilled, sedentary worker, requiring four fifteen-minute unscheduled bathroom breaks during the course of the day. (Doc. 5, PageID # 88). The VE opined that such unscheduled breaks would remove the individual from competitive work. (*Id*.) And, significantly, Dr. Makola's opinion, upon which the ALJ seemed to heavily rely, noted that, even with medication, Plaintiff still experiences days of uncontrolled diarrhea, with five to six bowel movements per day. (*Id*. at 377). Thus, the need for four unscheduled breaks throughout the day was supported by the record. However, the ALJ's RFC determination ultimately failed to include or recognize Plaintiff's need for unscheduled, frequent, and lengthy trips to the restroom.

Further, this Court would be remiss in not stating that the ALJ also fails to consider the toll that Plaintiff's condition takes on his anxiety and panic attacks. Even if Plaintiff's condition were somewhat controlled by medication, the thought of having an "accident" in the workplace would still provoke enormous anxiety. And, here, the medical records do not support finding that Plaintiff's condition is anywhere near as stable as the ALJ asserts.

Therefore, this Court believes that the ALJ's RFC determination fails to consider the severity of Plaintiff's physical and mental impairments in combination, and does not properly accommodate Plaintiff's medical needs, such that he would be able to perform work at the level suggested.

## V.  REMAND FOR BENEFITS

Remand is appropriate when the ALJ's decision is not supported by substantial evidence or where the Commissioner failed to apply the correct legal criteria.  *Bowen*, 478 F3d at 746.  Moreover, even if supported by substantial evidence, remand is appropriate if the ALJ failed to follow the Administration's own regulations, thereby prejudicing a plaintiff on the merits or depriving a plaintiff of a substantial right.  *Id*. Remand may also be warranted when the ALJ failed to consider certain evidence, or when the ALJ failed to consider the combined effect of the plaintiff's impairments.  *Id.* at 747-50; *Gentry*, 741 F.3d at 725-26.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).  Accordingly, where, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing, or to reverse and order benefits be granted. 42 U.S.C. § 405(g).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).  The Court may award benefits where the proof of disability is overwhelming, or where proof of disability is strong and opposing evidence is lacking in substance, such that remand would merely

27

involve the presentation of cumulative evidence.  *Faucher*, 17 F.3d at 176; *see also*

*Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985).

As fully recited here, and as evidenced by the medical record and the credible and

controlling findings of treating sources, Drs. Lunderman and Mauer, Plaintiff is unable to

engage in substantial gainful activity due to his numerous severe, medically determinable

impairments.  Proof of disability is overwhelming in the instant case, and remand will

serve no purpose other than delay.

## VI.  CONCLUSION

Based upon the foregoing, the Court believes the decision of the Commissioner

that Plaintiff Joseph F. Mershad was not entitled to disability insurance benefits, is NOT

SUPPORTED BY SUBSTANTIAL EVIDENCE, and should be REVERSED; and that

this matter should be REMANDED to the Commissioner for an immediate AWARD of

benefits beginning January 1, 2011.  That is, Plaintiff's Statement of Errors is well-taken

and should be sustained.

### IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability finding be VACATED;

2.  Plaintiff Joseph F. Mershad's application for disability insurance benefits be
    REMANDED to the Social Security Administration for an immediate
    AWARD of benefits beginning January 1, 2011; and

3.  This case be CLOSED on the docket of the Court.

Date:  2/18/2016                                         *s/ Sharon L. Ovington*
                                                         Sharon L. Ovington
                                                         Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).